IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LISA A. DICKSON,<br><br>             Plaintiff,<br><br>     vs.<br><br>MICHAEL A. ASTRUE, Commissioner of Social Security,<br><br>             Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No: 2:06-CV-777 DN<br><br>Magistrate Judge David Nuffer |

Plaintiff Lisa A. Dickson seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB) under Titles II of the Social Security Act.[1] The case was referred to the Magistrate Judge, with the consent of the parties, to conduct all proceedings under 28 U.S.C. § 636(c).

Ms. Dickson applied for DIB on June 14, 2004, alleging disability since January 4, 2004, due to rheumatoid arthritis.[2] The Social Security Administration denied her application initially and on reconsideration.[3] On October 14, 2005, Dickson received a de novo hearing before an administrative law judge (ALJ), who issued a decision on December 14, 2005, finding Dickson could perform a limited range of sedentary work and was therefore not disabled within the

---

[1] 42 U.S.C. §§ 401-433f.

[2] R. 43-48, 58.

[3] R. 35-41

meaning of the Social Security Act.[4]  The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.[5]  Ms. Dickson then filed for judicial review in this court alleging that the ALJ did not apply the correct legal standards and the findings are not supported by substantial evidence.

The ALJ applied the familiar five step evaluation process[6] in determining whether Dickson was disabled.  At the first step, the ALJ found Dickson had not engaged in any substantial gainful activity since her alleged onset date of January 1, 2004.[7]  At the second step, the ALJ found that Dickson had severe impairments within the meaning of the regulations: rheumatoid arthritis of the wrists and hands, and degenerative disk disease at C5/T1.[8]  At step three, the ALJ found that Dickson's impairments did not meet or equal the requirements of the Listings.[9]  At step four, the ALJ found that Dickson retained the residual functional capacity

> to lift and carry ten pounds occasionally, stand or walk for 15-30 minutes at a time and for four-six hours in an eight hour day, sit for 60 minutes at a time and for six-eight hours in an eight hour day with brief stretch breaks and regularly scheduled breaks, occasionally stoop, crouch, kneel and balance, never climb or crawl, occasionally finger and frequently reach and handle.[10]

In making this finding, he found that Dickson's allegations of disabling pain were not credible.

---

[4] R. 17-26.

[5] R. 6-8.

[6] 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988).

[7] R. 18, 24.

[8] R. 19, 24.

[9] *Id.*

[10] R.22, 24-25.

At step five, the ALJ, relying on the opinion of a vocational expert, found that Dickson retained the residual functional capacity to perform a significant number of jobs.[11]  Therefore, the ALJ found she was not disabled.[12]

Ms. Dickson argues that the ALJ (1) improperly rejected the opinion of the treating physician, (2) erred in the step three analysis that her impairments do not meet or equal Medical Listings 1.02 and 14.09A, (3) improperly rejected her subjective complaints and reached an unsupportable negative credibility finding, and (4) failed to meet the step five burden to identify specific jobs available in significant numbers that she could perform within her specific limitations.[13]

First, Dickson argues that the ALJ failed to provide adequate reasons for rejecting the opinion of the treating physician, Dr. Hagen.  The ALJ must evaluate all medical opinions in the record and is required to give controlling weight to the opinion of the treating physician so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record.[14]  The ALJ may discount the treating physician's opinion if it is internally inconsistent or inconsistent with other evidence.[15]

---

[11] R. 23-25.

[12] R. 25.

[13] Plaintiff's Memorandum in Support of Reversal or Remand of Commissioner's Administrative Decision at 7, docket no. 16, filed 5/31/07.

[14] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

[15] *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007).

In this case, the ALJ determined that Dr. Hagen's opinions were inconsistent with other medical evidence in the record.[16] Yet, all medical providers uniformly diagnose Dickson with progressive rheumatoid arthritis and all medical treatment notes are consistent in describing Dickson's pain, fatigue and limitations of motion. In August 2004, John Davis, M.D. found x-rays documented arthritic involvement.[17] Dr. McPeek's November 2003 report[18] and Dr. Max Root's report in May 2003[19] both support Dr. Hagen's later opinions and diagnosis. This demonstrates that Dr. Hagen's opinions were not inconsistent with the medical evidence in the record and his opinion, as the treating physician, should have been given greater weight. Additionally, the ALJ's reliance on Dr. Gremillion's report is somewhat misplaced, as Gremillion confirmed that he had made several errors in Dickson's file and that he did not have enough contact with her to complete any disability evaluation.[20]

Ms. Dickson also claims that the ALJ improperly rejected her subjective complaints when finding her not fully credible. Although the ALJ cited Social Security Ruling 96-7p[21], he never

---

[16] R. 21-22.

[17] R. 220-21.

[18] R. 123.

[19] R. 110-13.

[20] R. 184.

[21] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (titled Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).

explained how that standard applied to the facts and circumstances in this case. The ALJ asserted that Dickson's allegations of pain were not credible because she was able to visit with family and friends and attend church activities, in addition to shopping and driving. He speculated that her statement that she drove herself where she needed to go is inconsistent with Dr. Hagen's estimate that she could only drive 15 minutes at a time. He did not discuss the fact that in St. George, Utah - Dickson's home town - she can drive everywhere in town in 15 minutes or less.[22]

      Then the ALJ concluded that Dickson had sought very little medical care for her arthritis. However, the record evidence demonstrates that she regularly sought medical care, even traveling over four hours to Salt Lake City to see Dr. Gremillion, a rheumatoid arthritis specialist, when a specialist was no longer available in her area.[23] The ALJ cited a report by Dr. Gremillion which, as discussed above, is somewhat misplaced because Dickson stopped seeing him after only a few visits when she discovered factual errors in his reports. Ms. Dickson then began seeing Dr. Hagen, who has remained her treating physician.

      Dr. Hagen's medical records fully support the claimant's allegations. On examination, Dr. Hagen noted neck tenderness all along the cervical spine, adding that even the musculature around the neck was tender. She had "marked limited range-of-motion particularly going to the right side, perhaps only about 40 degrees of capacity."[24] She was able to turn better, perhaps to

---

[22] R. 20.

[23] R. 185.

[24] R. 209.

65 degrees, to the right. She was able to very slowly flex the neck to nearly touch her chin to the chest.[25] Dr. Hagen noted some significant synovitis of the left wrist extending down on to the hand, and mild synovitis of the right wrist.[26] An examination also showed decreased range of motion, tenderness of the C-spine, symptoms in left wrist and hand and tender bilateral wrists.[27] In a disability report dated March 3, 2005, Dr. Hagen opined that Ms. Dickson was only able to stand up to 20 minutes; able to walk for up to ½ hour; and had difficulty with sitting because of painful neck.[28] He stated that her wrists are severely affected and she is unable to lift or carry.  Reaching and working overhead were precluded by her painful neck.  She could not use her hands to push or pull or twist lids.  She could drive short distances.  He believed that on good days she could type up to 30 minutes.  It was unknown how long the limitations would last - her disease was in progression.[29] Dr. Hagen's additional treatment notes and latest RFC in the record, which were submitted to the Appeals Council, further validate Dickson's claims of pain and restrictions.[30]

Additionally, none of the doctors reports in the record expressed doubt that she was suffering from the pain she reported, which is further underscored by the Dickson's continuous pain medication regimen.  In fact, there is mention of pain in almost all of the hearing exhibits.

---

[25] R. 209-10.

[26] R. 210.

[27] *Id.*

[28] R. 212-13.

[29] *Id.*

[30] R. 231-47.

The ALJ cited objective medical findings to explain the pain in the decision,[31] yet he doubted Dickson's testimony regarding her pain and restrictions despite the consistent references to them in the medical evidence.  In so doing, the ALJ ignored one of the principles emphasized in SSR 96-7p:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[32]

The ALJ failed to adequately explain the basis for not finding Dickson credible and his analysis does not follow the guidance emphasized in SSR 96-7p.  SSR 96-7p speaks of circumstances where objective evidence of pain is lacking, but in this case the subjective complaints were supported by objective evidence.

Next, Dickson argues that the ALJ failed to meet his step five burden of identifying specific jobs she could perform in light of her limitations.   Because the court has already determined that the ALJ erred when evaluating the opinions of Dr. Hagen and when assessing Dickson's credibility, it follows that the step five analysis should be reexamined in this new light on remand.

Finally, Dickson claims that the ALJ erred in the step three analysis that her impairments do not meet or equal a Medical Listing.  On remand, the ALJ will be able to reexamine the step

---

[31]R. 20-21.

[32]SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

three determination with proper regard for the treating physician's opinions in the record, including those newly submitted[33] to the Appeals Council, which were not previously before the ALJ.

## Conclusion

The ALJ failed to follow the applicable legal standards when evaluating the opinion of the treating physician and in assessing Ms. Dickson's credibility in her complaints of pain. Consequently, his conclusions regarding the treating physician's opinion and claimant's credibility were not supported by substantial evidence. Accordingly, the case is reversed and remanded to the ALJ for further proceedings.

## ORDER

IT IS HEREBY ORDERED that the case is REVERSED and REMANDED for proper consideration of the treating physician's opinions and Ms. Dickson's credibility.

March 26, 2008.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[33] R. 231-47.